IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

ANDREW GERALD DIXON, )
)
                    Plaintiff, )
)
vs. )
)
KILOLO KIJAKAZI, )
) No. 4:22-cv-0069-HRH
                    Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f. Plaintiff Andrew Gerald Dixon has timely filed his opening brief[1] to which defendant, Kilolo Kijakazi, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On October 14, 2016, plaintiff filed applications for benefits under Title II (disability insurance or DIB benefits) and Title XVI (supplemental security income or SSI benefits),[3]

---

[1]Docket No. 15.

[2]Docket No. 16.

[3]In order to be entitled to DIB benefits, a claimant must establish that he was disabled prior to his last insured date. Armstrong v. Comm'r of Social Sec. Admin., 160 F.3d 587,
(continued...)

alleging that he became disabled on September 12, 2016. Plaintiff alleges that he is disabled due to several strokes. Plaintiff's applications were denied initially, and he requested an administrative hearing. After a hearing on August 9, 2018, an administrative law judge (ALJ) denied plaintiff's applications on September 18, 2018. On November 25, 2019, the Appeals Council denied plaintiff's request for review. Plaintiff sought judicial review and on July 29, 2020, pursuant to a stipulation of the parties, the court remanded this matter for further proceedings. Upon remand, a second administrative hearing was held on March 10, 2022; and on April 18, 2022, the ALJ issued a partially favorable decision. On August 5, 2022, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 18, 2022, partially favorable decision the final decision of defendant. On November 22, 2022, plaintiff commenced this action for judicial review of defendant's final decision.

General Background

Plaintiff was born on March 4, 1956. Plaintiff was 61 years old on his onset of disability date. Plaintiff has a high school education. Plaintiff's past relevant work includes work as a cook, a short order cook, a banquet chef, an executive chef, a fry cook, a pantry cook, a camp cook, and a hospital cook.

---

[3](...continued)
589 (9th Cir. 1998). "In contrast, a claimant is eligible for SSI once []he becomes disabled, but []he cannot receive benefits for any period before h[is] application date." Wellington v. Berryhill, 878 F.3d 867, 872 (9th Cir. 2017).

The ALJ's Decision

The ALJ issued a partially favorable decision, concluding that plaintiff was not entitled to benefits under Title II, which required plaintiff to show that he was disabled prior to December 31, 2021, the date last insured, but that plaintiff was entitled to benefits under Title XVI beginning on January 28, 2022.[4]

To reach these conclusions, the ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2021."[5]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[6]

---

[4]Admin. Rec. at 702.

[5]Admin. Rec. at 686.

[6]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im]

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since the alleged onset date" of September 12, 2016.[7]

At step two, the ALJ found that

> [s]ince the alleged onset date of September 12, 2016, the claimant has had the following severe impairments: status post vascular insult to the brain with temporary left-sided blindness and mild weakness, headaches, hypertension, diabetes mellitus, and obesity. Beginning on the established onset date of disability, January 28, 2022, the claimant has had the following severe impairments: vascular insult to the brain with some mild loss of peripheral acuity of the left eye, headaches, hypertension, diabetes mellitus, obesity, and chronic obstructive pulmonary disease (COPD)....[8]

The ALJ found that plaintiff had a mild neurocognitive disorder that was not a severe impairment.[9] The ALJ considered the "paragraph B" criteria and found that plaintiff had a mild limitation in understanding, remembering, or applying information; no limitation in

---

[6](...continued)
        to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[7]Admin. Rec. at 686.

[8]Admin. Rec. at 686.

[9]Admin. Rec. at 687.

interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself.[10]

At step three, the ALJ found that "[s]ince September 12, 2016, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[11] The ALJ considered Listing 11.04 (vascular insult to the brain); Listing 11.02 (epilepsy); and Listing 3.02 (chronic respiratory disorders).[12]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ first found that

> prior to January 28, 2022, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following. He could never climb ladders, ropes, and scaffolds. He must avoid all exposure to unprotected heights and avoid even moderate exposure to hazards.[13]

---

[10]Admin. Rec. at 687.

[11]Admin. Rec. at 688.

[12]Admin. Rec. at 688.

[13]Admin. Rec. at 691.

The ALJ discounted plaintiff's pain and symptom statements because they "were out of proportion to his objective findings and presentations at examinations"[14] and because they were inconsistent with his "reported activities of daily living[.]"[15]

The ALJ gave significant weight to Dr. Gaeta's opinion.[16] The ALJ gave some weight to Dr. Fraser's opinion.[17] The ALJ gave significant weight to Dr. Richmond's opinion.[18] The ALJ gave little weight to Dr. Thomas' opinions.[19] The ALJ gave some weight to Dr.

---

[14] Admin. Rec. at 693.

[15] Admin. Rec. at 695.

[16] Admin. Rec. at 696. Dr. Gaeta testified as a medical expert at the first administrative hearing. Dr. Gaeta testified that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; sit for 6 hours per day; stand/walk for 6 hours; could never climb ladders/scaffolds; could not work around dangerous machinery; and should completely avoid heights. Admin. Rec. at 46-47.

[17] Admin. Rec. at 697. On May 8, 2017, Dr. Shirley Fraser opined that plaintiff could occasionally lift/carry 50 pounds; could frequently lift/carry 20 pounds; could stand/walk for 6 hours; could sit for 6 hours; had no limits as to push/pull; could occasionally climb ramp/stairs, balance, and stoop; could never climb ladders/ropes/scaffolds; could frequently kneel, crouch, and crawl; had limited fingering; had limited vision; should avoid concentrated exposure to extreme cold, extreme heat, and vibration; and should avoid moderate exposure to hazards. Admin. Rec. at 81-84.

[18] Admin. Rec. at 697. On June 14, 2017, Dr. Joi Sanne Richmond opined that plaintiff could occasionally lift/carry 50 pounds; could frequently lift/carry 25 pounds; could stand/walk for 6 hours; could sit for 6 hours; had no limits as to push/pull; could never climb ladder/ropes/scaffolds; could occasionally climb ramps/stairs, balance and stoop; could frequently kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold, extreme heat, and vibration. Admin. Rec. at 506-509.

[19] Admin. Rec. at 697. On March 26, 2018, Dr. Thomas wrote that plaintiff was "not capable of any gainful employment now or in the future. An evaluation done at the Alaska (continued...)

Feigin's opinion.[20] The ALJ gave little weight to Dr. Winfrey's opinion.[21] The ALJ gave partial weight to Dr. Lander's opinion.[22]

---

[19](...continued)
Neurology Center is attached to this letter and confirms this opinion. H[e] has significant cognitive decline after his stroke and subsequent daily chronic headaches." Admin. Rec. at 531. On March 27, 2019, Dr. Thomas wrote that plaintiff

> has had persistent daily headaches since his stroke in 2016 that also affected his eyesight. The headaches are worsened with even minimal exertion and position change such as bending forward. He has seen a neurologist and various medications have been tried without success. The headaches also impair his ability to concentrate and focus. He is not currently employable and will not be employable in the foreseeable future.

Admin. Rec. at 8. On September 3, 2020, Dr. Thomas wrote that plaintiff "continues to have chronic daily headaches that greatly interfere with his activities of daily living. He is not able to be employed in any job.... I am an expert in Family Medicine and have been a board certified Family practice physician for 33 years. It is my expert opinion that he qualifies under social security guidelines for assistance." Admin. Rec. at 965.

[20]Admin. Rec. at 698. On May 16, 2017, Dr. Ron Feigin opined that plaintiff had no mental medically determinable impairments. Admin. Rec. at 93.

[21]Admin. Rec. at 698. Dr. Winfrey testified as a medical expert at the first administrative hearing. She testified that plaintiff had mild limitations as to understanding, remembering, and recalling information; mild limitations as to interacting with others; moderate limitations in terms of concentration, persistence, or maintaining pace; and no limitations as to adapting or managing oneself. Admin. Rec. at 37. Dr. Winfrey also testified that plaintiff would be precluded from working in a kitchen and that he was limited to "a job that's simple routine and repetitive...." Admin. Rec. at 38.

[22]Admin. Rec. at 699. On November 20, 2017, Dr. Lander did a neuropsychological evaluation. Admin. Rec. at 522. Dr. Lander noted that plaintiff's

> level of neurocognitive functioning places significant limitations [on] his employment options, which is further complicated by

(continued...)

The ALJ also found

> that beginning on January 28, 2022, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following. He can never climb ladders, ropes, and scaffolds. He must avoid all exposures to unprotected heights and avoid even moderate exposure to hazards. He must also avoid concentrated exposure to respiratory irritants (such as fumes, odors, dust and gases).[23]

---

[22](...continued)
> chronic pain and physical issues. Specifically, his decline in attention and concentration, together with slowed processing, are affecting his problem solving, planning, organizing, and other executive abilities. He certainly is not safe to work in a kitchen again. He may benefit from social security income at this time as he has not been able to be gainfully employed since his mini-strokes in September 2016.

Admin. Rec. at 528. Dr. Lander also noted that

> [t]he difficulties that Mr. Dixon displays suggest that he will struggle when his environment becomes complex. He will likely perform more efficiently in structured environments that allow him to complete tasks in a sequential, rather than simultaneous fashion. He will also benefit from the use of increased levels of organization to assist in his completion of tasks, with the possible assistance of others to serve to check his work when tasks become overwhelming. It is also likely that Mr. Dixon will require additional time to complete tasks when faced with increased demands.

Admin. Rec. at 529.

[23]Admin. Rec. at 699.

The ALJ found "that beginning on January 28, 2022, the claimant's allegations regarding his symptoms and limitations are consistent with the evidence."[24] The ALJ stated that she gave the same weight to the opinion evidence for the period "beginning January 28, 2022[.]"[25]

At step four, the ALJ found that "[p]rior to January 28, 2022, the claimant was capable of performing past relevant work as a short order cook, chef, and pantry goods maker."[26] The ALJ also found that "[b]eginning on January 28, 2022, the claimant's residual functional capacity has prevented the claimant from being able to perform past relevant work...."[27] The ALJ explained that the difference was that beginning on January 28, 2022, plaintiff had the "additional limitation that [he] must avoid concentrated exposure to respiratory irritants...."[28]

At step five, the ALJ found that "[b]eginning January 28, 2022, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can

---

[24] Admin. Rec. at 699.

[25] Admin. Rec. at 700.

[26] Admin. Rec. at 700.

[27] Admin. Rec. at 701.

[28] Admin. Rec. at 701.

perform...."[29] The ALJ did not make alternative step five findings for the period prior to January 28, 2022.

Thus, as set out above, the ALJ concluded that plaintiff "was not under a disability within the meaning of the Social Security Act at any time through December 31, 2021, the date last insured" but that plaintiff "became disabled" on January 28, 2022."[30]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But,

---

[29]Admin. Rec. at 701.

[30]Admin. Rec. at 702.

the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in finding that he only had a pulmonary impairment beginning on January 28, 2022, which was three weeks after the expiration of his insured status. In other words, plaintiff challenges the ALJ's finding that his onset of disability date was January 28, 2022.

"When a claimant has a non-traumatic ... impairment[], and [the ALJ] determine[s] the evidence of record supports a finding that the claimant met the statutory definition of disability, [the ALJ] will determine the first date that the claimant met that definition. SSR 18-1p. The ALJ's onset date determination "must be supported by the medical and other evidence and be consistent with the nature of the impairment[]." Id. The ALJ should consider " the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings." SSR 18-1p. "[T]he Agency has consistently found that while the date of onset is a single date on the calendar that must be determined for procedural reasons, the onset of an impairment can involve disease progression[,]" Kathryn K. v. Comm'r of Soc. Sec., Case No.

2:18-CV-00067-JTRm, 2019 WL 1292685, at *5 (E.D. Wash. March 20, 2019), and "[t]he onset date is not limited to the date of diagnosis as to an impairment." Stricker v. Acting Comm'r of Soc. Sec. Admin., Case No. CV-21-0317-TUC-SHR (LCK), 2022 WL 3588215, at *7 (D. Ariz. July 29, 2022). "[I]f the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of" a medical expert. SSR 18-1p. "The decision to call on the services of an ME is always at the ALJ's discretion." Id.

The ALJ found that plaintiff's pulmonary condition began on January 28, 2022, the date on which he "underwent a pulmonary function test where he showed severely obstructed expiratory flow volume loop" and Dr. Foote "diagnosed severe chronic obstructive pulmonary disease...."[31] However, the medical evidence of record shows that plaintiff's pulmonary condition, and the limitations that flowed from it, existed long before January 28, 2022. The ALJ appears to have overlooked Dr. Foote's notation that "[t]he obstruction was in part reversible after bronchodilator suggesting additional explanation of COPD/asthma overla[p] syndrome."[32] This notation is significant because the medical evidence of record

---

[31]Admin. Rec. at 699.

[32]Admin. Rec. at 992. "Asthma COPD overlap syndrome (ACOS) is an umbrella term that doctors use when a person has both asthma and chronic obstructive pulmonary disease (COPD). These lung diseases share some similarities, but they are separate conditions." https://www.medicalnewstoday.com/articles/asthma-copd-overlap (last visited May 18, 2023).

-12-

shows that plaintiff had a history of asthma[33] and that he was experiencing breathing problems as a result of this condition prior to January 28, 2022.[34] In addition, the very fact that plaintiff had pulmonary function testing done indicates that he was having pulmonary difficulties at some point prior to January 28, 2022. Contrary to what the ALJ seems to have assumed, plaintiff did not just begin having difficulties with his breathing due to his asthma/COPD on January 28, 2022. Quite simply, the record does not support the ALJ's finding that plaintiff's COPD, and any related limitations, did not begin until January 28, 2022, the date on which he had pulmonary function testing. Thus, the ALJ erred in determining that plaintiff's onset date of disability was January 28, 2022.

This error was not harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)). If plaintiff's pulmonary impairment, and any related limitations, began prior to his date last insured, then plaintiff would have been entitled to DIB benefits, which would have entitled plaintiff to a higher benefit amount that he received under SSI.

---

[33]Admin. Rec. at 364, 409 (plaintiff's history of asthma noted on September 20-21, 2016); 412 (plaintiff's history of asthma noted on October 4, 2016); 543 (on May 22, 2018, plaintiff's "problem list" included asthma).

[34]Admin. Rec. at 471 (plaintiff reported shortness of breath in November 2016); 517 (plaintiff reported wheezing and shortness of breath but that he had "no asthma" on July 20, 2017); 547-548 (plaintiff treated for breathing problems on February 26, 2018); 553-554 (plaintiff treated for wheezing and cough on December 19, 2017); 574 (plaintiff reported breathing problems due to his asthma on February 23, 2018); 989 (plaintiff reported shortness of breath associated with his COPD on November 30, 2021).

Plaintiff also argues that the ALJ erred as to his headache impairment. The ALJ found that plaintiff's headaches were a severe impairment in both the period prior to January 28, 2022, and the period after January 28, 2022.[35] The ALJ acknowledged that after his stroke in 2016, plaintiff had been "diagnosed with chronic headaches" and that "[d]espite treatment, he related that he continues to have daily headaches...."[36] The ALJ, however, found that "[d]espite the claimant's description of chronic ... severe headaches, his treatment providers had typically observed that he was pleasant, well appearing, and in no acute distress...."[37] The ALJ also found that plaintiff's "usually rather benign presentation appears incompatible with the reported frequency and severity of his physical symptoms and limitations.[38] The ALJ pointed out that in May 2018, at his appointment with Dr. Thomas "there was no mentioning of headaches ... and Dr. Thomas no longer listed headaches as an ongoing problem...."[39] The ALJ also noted that in April 2019, March 2020, and January 2021, plaintiff did not complain to Dr. Riley that he was having daily headaches.[40] Thus, the ALJ

---

[35]Admin. Rec. at 686.

[36]Admin. Rec. at 692.

[37]Admin. Rec. at 694.

[38]Admin. Rec. at 694.

[39]Admin. Rec. at 695.

[40]Admin. Rec. at 695.

did not include any limitations related to plaintiff's headaches in his RFC for either the period prior to January 28, 2022, or for the period after January 28, 2022.[41]

In his reply brief, plaintiff "concedes that the record does seem to demonstrate that his migraine headache impairment may have 'turned a page' sometime in 2021 in response to various treatment efforts[.]"[42] But, plaintiff insists that prior to that date, the record shows that he had severe headaches almost daily. Plaintiff argues that the ALJ should have considered whether there was a 12-month period during which his headaches significantly affected his daily functioning. In other words, plaintiff argues that the ALJ should have at least considered whether he was entitled to a closed period of disability[43] at some point after his alleged onset date in 2016 and prior to January 28, 2022, the date on which the ALJ found him disabled.

The medical evidence of record shows that plaintiff's headaches were first mentioned in September 2016,[44] that they were ongoing in October 2016,[45] that in November 2016, his

---

[41]Admin. Rec. at 691, 699.

[42]Plaintiff's Reply Brief [etc.] at 3-4, Docket No. 17.

[43]"A closed period of disability is the period of disability with a definite beginning date and a definite ending date that the adjudicator establishes at the time of adjudication." POMS DI 25510.001(A).

[44]Admin. Rec. at 400.

[45]Admin. Rec. at 412, 415.

headaches were severe,[46] that in December 2016, his headaches were daily and getting worse,[47] that in March 2017, they were daily,[48] and that in April 2017, they were almost constant.[49] The record shows that plaintiff's headaches continued to persist as evidenced by treatment records from November 2017, December 2017, February 2018, and May 2018.[50] And, in March 2019, Dr. Thomas noted that plaintiff had chronic daily headaches; in September 2020, Dr. Thomas noted that plaintiff continued to have "chronic daily headaches that greatly interfere with his activities of daily living[;]" and in November 2021, Dr. Thurston-Hicks listed chronic headaches as one of plaintiff's impairments.[51] The foregoing evidence establishes that plaintiff was having almost daily headaches for a period of time after his stroke in 2016, and it is likely that these headaches would have impacted plaintiff's ability to work. Thus, the ALJ should have considered whether there was a period of time of at least 12 months during which plaintiff had some limitations related to his chronic headaches and how those limitations would have impacted plaintiff's ability to work. In other words, the ALJ should have considered whether plaintiff was entitled to a closed period

---

[46]Admin. Rec. at 470-471.

[47]Admin. Rec. at 479.

[48]Admin. Rec. at 565.

[49]Admin. Rec. at 497.

[50]Admin. Rec. at 524, 553, 543, 547.

[51]Admin. Rec. at 8, 965, 990.

Case 4:22-cv-00069-HRH   Document 18   Filed 05/18/23   Page 16 of 18

of disability as a result of his headache impairment and the limitations that flowed from that impairment.

Because the ALJ erred, the court must decide whether to remand this matter for an award of benefits or for further proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the

-17-

claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Here, a remand for further proceedings is necessary. Further proceedings are necessary to determine plaintiff's disability onset date. While it is within the ALJ's discretion as to whether to call on the services of a medical expert in making this determination, the court would strongly recommend that the ALJ do so in this case. The court is not at all convinced that it is possible for the ALJ to infer from the current record the date on which plaintiff's severe pulmonary impairment rendered him disabled. Further proceedings are also necessary to allow the ALJ to determine, in the first instance, whether plaintiff is entitled to a closed period of disability because of limitations flowing from his headache impairment.

## Conclusion

Based on the foregoing, defendant's final decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 18th day of May, 2023.

/s/ H. Russel Holland
United States District Judge